## Markley Estate

*Gilbert P. High* and *High, Swartz, Roberts and Seidel,* for accountant.

TAXIS, P. J., July 12, 1967.—The accountant presents a question of will interpretation. Testatrix provided in paragraph 5 of her last will and testament, as follows:

"5. I give and bequeath unto my nephew, Robert Stevenson and Emily Stevenson, his wife, as tenants by the entireties, my seventy-eight (78) shares of common stock of Link Belt Company".

The Link Belt Company stock split three for two on April 23, 1965. The question is, whether the 39 additional shares on the split attributable to the 78 share certificate pass under paragraph 5 of the will, or whether these 39 shares fall into the residue of the estate which is given to the Shriners Hospital for Crippled Children in Philadelphia. Decedent received 78 shares of Link Belt Company from her father, Otto H. Noble, on July 28, 1955. In December of 1955, she received an additional 75 shares of Link Belt stock, under the will of her deceased husband, Ernest D. Markley. Thus, when testatrix executed her will on September 14, 1960, bequeathing the 78 shares of common stock to Robert and Emily Stevenson, she owned an additional 75 shares.

While a will is only effective at death, the intent of the testatrix governs concerning the identity or the value of the legacy. This is governed by the words of the will in relation to the surrounding circumstances: McFerren Estate, 365 Pa. 490, 496. In McFerren Estate, the Supreme Court found that a bequest of 50 shares to each of two legatees, at a time when decedent owned 100 shares, manifested an intent to bequeath to each legatee one half of the stock which decedent

then owned in the corporation. Thus, in that case, each legatee was entitled to one half of the stock owned by decedent at death, so long as no new capital had been added and no new shares purchased. The fact that the number of shares was increased because of the corporation's revision of its capitalization did not affect the entitlement of each legatee to one half of the stock owned by decedent at death. The present case is distinguishable from McFerren Estate, supra, and Rempp Estate, 33 D. & C. 2d 426, and is governed by Woodward Estate, 407 Pa. 638, where decedent bequeathed shares of stock to two legatees, but the number of shares bequeathed to the two legatees did not together equal the number of shares owned by decedent at the time of the execution of the will. Accordingly, when the number of shares owned by decedent tripled, by reason of a stock split, between the date of the will and the date of death, the court held that there was nothing in the surrounding circumstances or the language of the will to permit the legatee's claim to three times the number of shares bequeathed. In the present case, like Woodward Estate, testatrix in paragraph 5 of her will did not bequeath or dispose of all of her stock interest in Link Belt Corporation, but only 78 of the 153 owned at the time the will was executed. Thus, it was the intent of testatrix, as gleaned from the will, to specifically bequeath only 78 shares to Robert and Emily Stevenson. Any other stock that she might have owned in Link Belt Company she intended to pass under the residuary clause of her will. See Fid. Review, Sept. 1962.

The account is confirmed, and it is ordered and decreed that Henry G. Keller, executor, as aforesaid, forthwith pay the distributions herein awarded.

And now, July 12, 1967, this adjudication is confirmed nisi.